**PIONEER S. S. CO. v. GREAT LAKES TOWING CO. et al.**

No. 3402.

District Court, N. D. Ohio, E. D.

July 2, 1946.

Duncan, Leckie, McCreary, Schlitz & Hinslea, of Cleveland, Ohio, for Pioneer S. S. Co.

W. Alexander Eldridge, of Cleveland, Ohio, for Great Lakes Towing Co. and Dunham Towing & Wrecking Co.

FREED, District Judge.

The Pioneer Steamship Co., libelant, owner of the Steamer Walsh, seeks to recover compensation for damages from the respondent, Dunham Towing & Wrecking Co., as operator of the Steam Tug Maine, and the respondent, Great Lakes Towing Co., as owner of the tug, alleging that on October, 16, 1943, while the Maine was assisting the Walsh in leaving the dock at Indiana Harbor:

(1) That those in charge of the Maine's navigation were careless, negligent and inattentive to their duties,

(2) That they failed to maintain an efficient and attentive lookout, and

(3) That they improperly shoved the bow of the Walsh away from the dock, thereby forcing her stern into collision with the dock, causing the resulting damage.

That a tug, unlike a common carrier, is not an insurer of the safety of her tow or the vessel she assists, is too well settled by an unbroken chain of authority as to require citation. She is liable only for negligence in performing the task she is hired to do. Exercise of caution, such maritime skill as is usually possessed by other tug captains and reasonable care are the only requirements imposed on the master of the tug.

In an action against the tug, to recover damages sustained by the tow, the burden rests upon the libelant to prove by a fair preponderance of the evidence that the tug was negligently navigated, causing the injuries sustained.

Keeping this in mind, what does the proof show?

An examination and re-examination of the complete record reveal there are but few salient matters not in sharp conflict throughout the testimony.

Among the facts admitted to be true are (1) that the Walsh was lying at dock in Indiana Harbor on or about the time of the events complained of, (2) that the weather at 10 p. m., on the night in question, was extremely heavy, (3) that the Walsh sought the assistance of the tug in moving the steamer from the dock and turning her into the winding basin, (4) that the master of the tug on duty at 10 p. m., refused to undertake the movement because of the weather, (5) that some time later the tugmaster, here involved, was called aboard the Walsh and, at the request of the steamer's master, made a trip into

the harbor to report the condition of the sea, and (6) that he returned and went aboard the Walsh a second time and that some conversation was had with reference to the contract of assistance.

From this point on, throughout the entire period covered by the conversations and events which determine the real issues in this case, there is a sharp and irreconcilable conflict of testimony.

Capt. Duclon of the Walsh said in the conversation with Capt. vanVelzen of the Maine, that he asked about the risk involved in the movement because of the prevailing weather conditions. He stated the tugmaster informed him the weather was bad and that there would be risk involved. He then related that he warned Capt. vanVelzen he wanted no guessing, and that he would not permit the Walsh to be moved unless the captain of the tug was certain the operation could be effected without damage. He testified the master of the tug then told him there would be no danger involved. It is undisputed that during this conversation Capt. Duclon ordered the tug to turn the steamer after her stern had cleared the end of the dock, by pushing up against the bow of the Walsh so as to head her out into the channel. The master of the Walsh asserted that after this conversation he took his position in the pilot house at the stern of the vessel, that he ordered full speed astern, and that the Walsh began, under her own power, to back out of the slip along the dock. He remained in the pilot house with the wheelsman and, from his station there, he could see the smoke stack and the stern of the tug. He was not in a position to observe the movements of the Tug Maine during the entire time the Walsh was leaving the dock and being turned into the basin. He said, further, that before the Walsh had proceeded far enough astern for her to clear the end of the dock, because the tug was pushing the bow of the Walsh out and forcing the stern against the dock, he shouted down to the second mate, Melvin Schodt, who was stationed at the forecastle within sight of the tug, to order the tug to stop shoving. Capt. Duclon asserted that a few moments later he again shouted down to the mate, and again Schodt shouted to the tug to stop

shoving. On this latter occasion, Capt. Duclon claims he heard and felt a rubbing of the steamer's side against the dock. The vessel continued to back out of the slip and the tug shoved her bow around into the channel. An examination was made and, according to the libelant's contention, the Walsh was found to have been damaged.

In sharp conflict with this testimony is that of the master of the tug, who stated he warned Capt. Duclon it would be dangerous to attempt the movement under the then existing weather conditions. Capt. vanVelzen said he informed the master of the Walsh that he would not undertake the maneuver unless Capt. Duclon assumed full responsibility for any damage that might result from the operation. He testified that the captain finally agreed to leave the dock, and that his tug took a position just ahead of the bow of the Walsh and waited for her to clear the dock, coming up with her as she proceeded along the length of the pier. He asserted it was not until after he saw the vessel's stern clear the green light at the end of the dock, that he brought his tug up against the Walsh's bow, and began to push her about so that she straightened up in the channel. Capt. vanVelzen testified unequivocally and positively that the Maine did not come in contact with the Walsh at any time during the period when she was moving full speed astern, until he finally began the winding movement to turn her into the basin.

Second Mate Schodt, the only witness aboard the Walsh actually in a position to observe the movements of the tug at the bow, testified he saw the Maine bump the steamer twice, and that each bump, in his words, lasted for just about a minute, as the Walsh backed out of the slip into the basin.

Upon questioning by the court as to the meaning of his description, Schodt was asked:

"Court: Now, was this a shoving or pushing of your vessel, or was it simply a bump as a result of his speed being greater than the speed of the Walsh in backing out stern ahead?

"Schodt: That is what I would say.

"Court: You would say what?

"Schodt: That it was due to his coming up too fast and closed the distance and come in contact with us.

"Court: And then immediately backed away?

"Schodt: Just as soon as the captain yelled, which was just like it happened, I remember, he came in contact and bumped us and then dropped back."

There is a direct dispute as to where the collision between the Walsh and the dock took place. There is direct conflict between the experts as to whether the seamanship of Capt. Duclon was good or bad under the circumstances, and there is further dispute on the question whether the captain of the Walsh or the master of the tug decided against the use of a towline during the operation.

Nowhere in the record may there be found any testimony as to any "shoving" of the Walsh before her stern had cleared the end of the dock, other than in the evidence offered by Capt. Duclon, who was in no position actually to see whether there was or was not a "shoving" since the most he could observe were the stack and the after-end of the tug from his station in the pilot house. Nor is the evidence convincing that the claimed "bumping" for "just about a minute" caused the damage inflicted upon the Walsh.

It is obvious, therefore, from the state of the evidence, that the court is left to infer, from the mere statement of Capt. Duclon, in the face of the direct contradiction by Capt. vanVelzen, and the equivocations of the second mate, that the Maine did, in fact, prematurely shove the Walsh, and that this shove forced her into collision with the dock, and that this collision proximately caused the damage which is the subject of the recovery sought here.

It is the court's conclusion that by the production of evidence of the nature here recited, that the libelant has not maintained the burden cast upon it, and judgment must be for the respondents.

This being the result, the court finds it unnecessary to consider the effect of the tariff which the respondents contend would relieve them, in any event, of liability for risks incurred in the operation; or whether such tariff, as the libelant claims, is void as against public policy, as well as other questions raised in the voluminous briefs of counsel.